UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARY M. PATTERSON,

        Plaintiff,

        v.                                   **DECISION AND ORDER**
                                                            17-CV-1195S

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

        1.      Plaintiff Mary M. Patterson brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her application for Supplemental Security Income ("SSI") benefits under Title XVI of the Act. (Docket No. 1). The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

        2.      On August 20, 2014, Plaintiff protectively filed an application for SSI with the Social Security Administration ("SSA"). (R.[1] at 356-65). Plaintiff alleged disability since February 4, 2013,[2] due to chronic obstructive pulmonary disease ("COPD"), bronchitis, asthma, degenerative lumbar disease, heart disease, high blood pressure, vertigo, depression, post-traumatic stress disorder ("PTSD"), thyroid disease, sleep apnea, severe headaches, sores on feet, hiatal hernia, ulcers in stomach, gastroesophageal reflux disease ("GERD"), multiple prior heart attacks, high cholesterol, cracked disc with pinched nerve, chronic numbness and pain, and reading and

---

[1] Citations to the underlying administrative record are designated as "R."
[2] SSI benefits are not payable until the month following the month an individual filed the application. 20 C.F.R. 416.335. Therefore, Plaintiff's alleged onset date was amended to August 20, 2014. (R. at 69, 434).

comprehension issues. (R. at 392 - 400). Plaintiff's application was denied (R. at 271, 294-98), and Plaintiff thereafter requested a hearing before an administrative law judge ("ALJ") (R. at 301-303).

3. On March 9, 2017, ALJ Stephen Cordovani held a hearing at which Plaintiff—assisted by counsel—appeared and testified. (R. at 63-111). Vocational Expert ("VE") Michele Erbacher also appeared and testified at the hearing by telephone. Id. At the time of the hearing, Plaintiff was 57 years old (R. at 388), with a GED and some college (R. at 74, 393). Plaintiff has past work experience as hotel housekeeper. (R. at 75, 394).

4. The ALJ considered the case *de novo* and, on June 19, 2017, issued a written decision denying Plaintiff's application for benefits. (R. at 7-17). The Appeals Council denied Plaintiff's request to review the ALJ's decision on November 18, 2017. (R. at 1-6). Plaintiff filed the current action, challenging the Commissioner's final decision,[3] on November 20, 2017. (Docket No. 1).

5. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure (Docket Nos. 12, 16), at which time this Court took the matter under advisement without oral argument. For the following reasons, Plaintiff's motion is denied, and Defendant's motion is granted.

6. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); <u>Wagner v. Sec'y of Health & Human Servs.</u>, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there

---

[3] The ALJ's June 19, 2017 decision became the final decision of the Commissioner of Social Security on this matter when the Appeals Council denied Plaintiff's request for review.

has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity

3

of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

9. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

10. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20

4

C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

11. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since August 20, 2014. (R. at 12). At step two, the ALJ found that Plaintiff has the following severe impairments: obesity, chronic obstructive pulmonary disease ("COPD"), hypertension, coronary artery disease status post myocardial infarction and right coronary artery stenting, hearing loss, degenerative disc disease of the lumbar spine, mild scoliosis, and headaches. (R. at 20). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 14).

12. Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following exceptions:

> [Plaintiff] can occasionally climb stairs and ramps, can occasionally knee[l], crouch, crawl and stoop, cannot climb ropes, ladders or scaffolds, cannot work around unprotected heights or dangerous moving mechanical parts, should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation and other respiratory irritants, should avoid exposure to loud noises and cannot perform telephone work.

(R. at 14).

13. At step four, the ALJ found Plaintiff to be capable of performing past relevant work as a housekeeper (DOT 323.687-014) as actually and generally performed. (R. at 16-17). Accordingly, the ALJ found that Plaintiff is not disabled. Id.

14. Plaintiff argues that the ALJ's decision is not based on substantial evidence, claiming that: (1) the ALJ erred in failing to find Plaintiff's carpal tunnel syndrome to be a

5

severe impairment; (2) the ALJ's RFC determination was based on "cherry-picked" evidence, and not supported by objective medical evidence; and (3) that the ALJ erred in giving only limited weight to the opinion of physician's assistant, Colin Tedesco, who found Plaintiff to have several significant physical limitations. (Docket No 12 at 4-5). Each argument is addressed in turn.

15. With respect to Plaintiff's alleged or reported carpal tunnel syndrome, Plaintiff argues that the ALJ "is in no position to determine the activities described by Plaintiff lead to the conclusion that the carpal tunnel did not 'result in more than minimal limitations,'" and that substantial evidence does not support a finding that Plaintiff's carpal tunnel is not a severe impairment. (Docket No. 12 at 4-5). We disagree.

16. A diagnosis of a disease or impairment does not necessarily support a finding of disability. See Rivers v. Astrue, 280 F. App'x 20, 22 (2d Cir. 2008) (summary order) ("mere diagnosis […] without a finding as to the severity of symptoms and limitations does not mandate a finding of disability"). "A claimant has the burden of establishing that she has a 'severe impairment,' which is any impairment or combination of impairments which significantly limits her physical or mental ability to do basic work." Woodmancy v. Colvin, 577 Fed. Appx. 72, 74; 2014 U.S. App. LEXIS 16886, *2 (2d Cir. 2014) (quoting 20 C.F.R. §416.920[c]). "To be considered 'severe,' the impairment 'must have lasted or must be expected to last for a continuous period of at least 12 months,' unless expected to result in death." Ryan v. Colvin, 2017 U.S. Dist. LEXIS 78313, *7; 2017 WL 2240256 (W.D.N.Y. May 23, 2017). "The mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, by itself, sufficient to render a condition severe." Id. (quoting Flanigan

6

v. Colvin, 21 F. Supp. 3d 285, 300 (S.D.N.Y. 2014) (internal quotation and punctuation omitted).

17. Plaintiff testified that her symptoms began after August 29, 2016. (R. at 88). The record indicates that Plaintiff first complained of pain and numbness in her arms and hands to her physician, Dr. Anand, on September 8, 2016. (R. at 900). Dr. Anand directed Plaintiff to call the following week to schedule a nerve test for carpal tunnel syndrome if the symptoms continued. Id.

18. Plaintiff returned to Dr. Anand on October 7, 2016 with complaints of sharp pain in the forearm, wrist, and fingers, and was advised to use wrist splints for carpal tunnel. (R. at 901). On February 9, 2017, Plaintiff again complained of numbness and pain in the forearms, wrists, and hands. Dr. Anand noted that Plaintiff tested positive for Tinel's sign, and that Plaintiff was scheduled for an "EMG nerve conduction study to assess the severity of carpal tunnel syndrome next Friday." (R. at 949). However, the record does not reflect that Plaintiff submitted to this electrodiagnostic testing.

19. Plaintiff offered no evidence of functional limitations caused by her alleged carpal tunnel, nor did she submit to a scheduled nerve conduction study, which Plaintiff admits is "the gold standard" in terms of diagnostic testing for carpal tunnel syndrome. (Docket No. 12 at 5). Furthermore, fewer than ten months elapsed between the onset of Plaintiff's alleged carpal tunnel syndrome and the ALJ's decision, and the record is silent on whether the condition was expected to persist for at least 12 months.

20. Because the evidence of record does not indicate that Plaintiff suffered an impairment that caused functional limitations and lasted for at least 12 months, Plaintiff

7

did not meet her burden of proof. Therefore, this Court finds that substantial evidence supports the ALJ's finding that Plaintiff's carpal tunnel is not a severe impairment.

21. Next, Plaintiff alleges that the ALJ improperly cherry-picked portions of a 2011 neurological consultation that supported a finding that Plaintiff is not disabled, while "ignoring the clear implications of the doctors' recommendation in creating an inconsistent functional capacity." (Docket No. 12 at 4). Plaintiff contends that Dr. Leonardo's 2011 recommendation that Plaintiff "refrain from any job which requires an extended period of time standing or sitting, and no heavy lifting, no strenuous activity" (R. at 926) is "impossible" to reconcile with the ALJ's finding that Plaintiff could work as a housekeeper. (Docket No. 12 at 4).

22. It is well-settled that an ALJ may not "cherry-pick" evidence by crediting evidence that supports a finding of no disability, while ignoring conflicting evidence from the same source. See Starzynski v. Colvin, 2016 U.S. Dist. LEXIS 164444, *8, 2016 WL 6956404 (W.D.N.Y. Nov. 26, 2016). "While an ALJ is entitled to resolve conflicts in the evidentiary record, [he or] she 'cannot pick and choose evidence that supports a particular conclusion.'" Trumpower v. Colvin, 2015 U.S. Dist. LEXIS 3826, *46, 211 Soc. Sec. Rep. Service 690, 2015 WL 162991 (W.D.N.Y. Jan. 13, 2015) (quoting Smith v. Bowen, 687 F. Supp. 902, 904 [S.D.N.Y. 1988]; citations omitted).

23. Here, the ALJ stated that he gave great weight to Dr. Leonardo's 2011 recommendation that Plaintiff avoid prolonged sitting, standing, and heavy lifting. (R. at 16). The ALJ noted that "these restrictions are vague and do not use the functional terms defined in the regulations," but nevertheless found them to be consistent with Plaintiff's abilities and the "lack of significant treatment for her back pain." (R. at 16).

24. The ALJ accounted for Dr. Leonardo's recommendation that Plaintiff avoid work involving heavy lifting or strenuous activity by finding that Plaintiff has the RFC to do light work, with certain exceptions. (R. at 14-16). Dr. Leonardo also recommended Plaintiff refrain from any job that would require "an extended period of time sitting or standing," but did not specify the length of time that he would consider to be an "extended period". (R. at 926). Finally, Dr. Leonardo opined that he did not believe Plaintiff qualified for 100% disability and recommended conservative treatment for Plaintiff's back pain. Id.

25. Plaintiff takes issue with the ALJ's characterization of her treatment history, and correctly points out that two potential treatments—surgery, and narcotic pain medication—were contra-indicated due to Plaintiff's history of coronary artery disease ("CAD") and substance abuse. (Docket No. 12 at 4). However, these were not the only treatments recommended.

26. In all, no fewer than three different doctors offered to treat Plaintiff's back pain with epidural steroid injections, but she refused each time. The September 16, 2011 neurosurgical consultation report indicates that Dr. Leonardo recommended "conservative treatment in terms of epidural steroid injection as well as weight loss and physical therapy," but Plaintiff declined the steroid injections. (R. at 924-26). On October 1, 2013, Dr. Yu found "no indications for surgery at this time," and noted that Plaintiff had declined the doctor's "still[-]available" offer for epidural injections. (R. at 491). Dr. Yu recommended that Plaintiff exercise. Id. On May 1, 2015, Dr. Rogers, an osteopath, also discussed epidural steroid injections, but noted that Plaintiff preferred not to undergo such treatment. (R. at 691). Instead, Dr. Rogers referred Plaintiff to physical therapy. Id.

9

27. At the hearing on March 9, 2017, Plaintiff testified that she stopped going to physical therapy because she found that she could do the exercises and stretches she learned there at home. (R. at 87, 28-29). Plaintiff also testified that that she was not receiving any treatment for her back pain (R. at 79), despite claiming to be "in pain all the time" due to her back (R. at 85).

28. The record provides substantial evidence that Plaintiff's back pain, as Dr. Leonardo indicated in 2011, does not render her completely disabled. (R. at 926). On December 9, 2013, Plaintiff stated that she "would like to refrain from adding any medication [to treat her back pain] and continue her exercises learned from physical therapy." (R. at 553). A physical exam conducted at this visit demonstrated Plaintiff had a normal gait and 5/5 strength in all extremities. Id. On May 12, 2014, Plaintiff declined additional medication (Cymbalta) and stated that "her back pain is manageable with physical therapy." (R. at 551).

29. On February 20, 2015, Plaintiff reported no back pain and a physical exam found her back was nontender, with normal range of motion and alignment. (R. at 653-55). On April 29, 2015, Plaintiff again reported no back pain, and a physical exam found normal range of motion. (R. at 668-670).

30. On May 1, 2015, Plaintiff reported lower back pain that had persisted for the past 2-3 years and assessed her pain level at 5-10 out of 10. (R. at 689-91). Dr. Rogers noted that Plaintiff had not had any recent physical therapy and that she declined epidural steroid injections. Id. Dr. Rogers conducted a physical exam, finding Plaintiff had a normal gait and no difficulty walking, but that she had limited range of motion with low

back pain. Id. Dr. Rogers recommended epidural steroid injections (Plaintiff declined) and referred her to physical therapy. Id.

31. At a December 7, 2015 follow-up for her coronary artery disease, Plaintiff indicated "she is walking ad lib without limiting exertional dyspnea," and Dr. Merhige encouraged "daily walking" for weight loss. (R. at 777-78). On January 28, 2016, Plaintiff reported that she "does have exertional dyspnea walking one block at a moderate pace on a flat surface" and Dr. Merhige ordered a treadmill stress echocardiogram ("echo") test to "hopefully reassure [Plaintiff] about the safety of exercise." (R. at 779-80).

32. Dr. Merhige noted that Plaintiff exercised to 7 METS without chest discomfort during the stress echo on February 29, 2016, and that a subsequent PET myocardial perfusion imaging study done on April 14, 2016 "demonstrated only mild diffuse coronary disease with no evidence of obstructive stenosis." (R. at 852). Dr. Merhige reviewed these results with Plaintiff on July 28, 2016, and again recommended daily walking exercise. (R. at 853-54).

33. On September 8, 2016, and again on October 7, 2016, and February 9, 2017, when Plaintiff presented with complaints of wrist pain and numbness in her hands, she asserted each time that her back pain "is more or less stable." (R. at 900, 901, 949).

34. The ALJ noted that Plaintiff's ability to exercise to 7 METS on her stress echo "is supportive of light exertion," and gave great weight to the opinion of consulting osteopath Dr. Miller, who saw Plaintiff on December 5, 2014. (R. at 15, 641-46). Dr. Miller noted that Plaintiff "cooks 15 to 20 times a week, cleans once a week, and [does] laundry twice a week." (R. at 642). A physical exam showed Plaintiff had normal gait and stance, with "squat 75% of full," though Plaintiff declined to walk on heels and toes.

(R. at 643). Dr. Miller opined that Plaintiff should avoid respiratory irritants and exertional activity, and that Plaintiff has mild limitations with respect to heavy lifting, bending, and carrying. (R. at 645).

35. We find that the medical record supports the ALJ's finding that Plaintiff did not receive significant treatment for her back pain and that the ALJ's determination of Plaintiff's RFC is not inconsistent with Dr. Leonardo's 2011 report or the evidence of record. Therefore, Plaintiff's argument that the ALJ improperly cherry-picked evidence to support a finding of disability fails.

36. Plaintiff also contends that the ALJ erred in giving only limited weight to the opinion of physician's assistant Colin Tedesco. (Docket No. 12 at 4). Mr. Tedesco completed a two-page medical examination form for employability assessment, disability screening, and alcoholism/drug addiction determination on January 17, 2017. (R. at 952-53). He checked boxes on the form to indicate that Plaintiff is "very limited" in walking, standing, sitting, lifting, carrying, pushing, pulling, bending, and stairs or other climbing. Id. Mr. Tedesco also checked form boxes to indicate Plaintiff is "moderately limited" in seeing, hearing, speaking, and using hands. Id.

37. To support his assessment of these significant functional limitations, Mr. Tedesco, who indicated that Plaintiff had been a patient for two months, listed five medical conditions: diabetes mellitus, CAD, degenerative disc disease, lung nodule, and hearing loss, but left the dates of diagnoses for these conditions blank. Id. In addition, as the ALJ points out, Mr. Tedesco's failed to reference any objective medical evidence that supported his opinions of Plaintiff's physical limitations. (R. at 16).

38. Plaintiff argues that a May 1, 2015 Progress Note, which references an MRI that showed disc desiccation and herniation "is extensive objective evidence in support of PA Tedesco's opinion, whether or not explicitly cited in his assessment." (Docket No. 12 at 4). This argument is unavailing.

39. Mr. Tedesco expressed his opinion of Plaintiff's functional limitations merely by checking boxes on a form. (R. at 953-953). He did not explain these limitations, nor did he indicate which of Plaintiff's conditions would account for such significant restrictions on Plaintiff's physical functioning. Id.

40. The Second Circuit has held a treating physician's opinion that is expressed merely as a response to a multiple-choice question to be "relatively uninformative," and thus not controlling. See Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (finding no error in the application of the treating physician rule by an ALJ who did not afford controlling weight to a treating source's "relatively uninformative response to a multiple-choice question about [claimant's] ability to sit"). Accordingly, Plaintiff's argument that the ALJ erred in affording Mr. Tedesco's opinions limited weight also fails.

41. Having reviewed the ALJ's decision in light of Plaintiff's arguments, this Court finds no error in the ALJ's determination. The decision contains an adequate discussion of the medical evidence supporting the ALJ's determination that Plaintiff is not disabled, and Plaintiff's aforementioned arguments are unavailing. Plaintiff's Motion for Judgment on the Pleadings is therefore denied, and Defendant's motion seeking the same relief is granted.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 12) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 16) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:	January 18, 2019
	Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge
